## Ulsh *versus* Strode.

It is the duty of a defendant in an ejectment, if he does not dispute the whole of the plaintiff's claim, to enter his defence for such part as he disputes. If he pleads the general issue, he admits himself to be in possession of the whole of the land claimed in the writ.

Error to the Common Pleas of *Juniata county.*

Ejectment for one hundred and fifty acres of land in Greenwood township.

Joseph Ulsh, Emanuel Sanders and Reuben Strausser, plaintiffs in error, *vs.* Richard Strode, defendant in error.

The plaintiff below, defendant in error, claimed title to the land in controversy, under a warrant to Peter Osborne, for one hundred and fifty acres of land, dated 3d June, 1793, in Greenwood township, adjoining Galbreath's land, including a spring on north side of said land.

Surveyed 5th June, 1793—one hundred and fifty acres thirty-two perches.   Returned 25th February, 1795.

Will of Peter Osborne, devising the land surveyed on this warrant, and deeds of conveyance from the devisees to the plaintiff below, Richard Strode, were given in evidence.

The defendants below claimed title by virtue of an actual resident settlement by Edward Reed, commenced in March, 1828; buildings erected upon it in 1829; marking of his boundaries upon the ground, and living upon it from that time until now.   A warrant was taken out for the land claimed by the defendants, in the name of William Cox, dated 24th June, 1839, for three hundred acres improved land; interest counted from 1st March, 1828. Survey upon it 12th and 13th November, 1839; returned three hundred and twenty-nine acres one hundred and fifty-five perches. Upon this survey the lines of the Reed improvement were adopted. Cox took out the warrant for Reed, and conveyed the legal title to it to him, 18th March, 1842.

Judgments were obtained against Edward Reed, in the Common Pleas of Juniata county, and the land of Reed sold to defendant, Joseph Ulsh, who held a regular sheriff's title for the property, from 8th May, 1844, when sheriff's deed was acknowledged.

The principal and only question in the cause was as to the loca-

[Ulsh *v.* Strode.]

tion of the Peter Osborne warrant; whether the survey upon it, as located on the ground, included the land, or any portion of it, surveyed on the Cox warrant, which covered the Reed improvement.

The action of ejectment was brought to No. 81, September term, 1848; to which the defendants appeared; pleaded not guilty.

To sustain the issue on his part, the plaintiff showed the warrant to Peter Osborne's survey, and the other conveyances, vesting the land surveyed upon that warrant in Richard Strode; and rested.

The defendants below then gave testimony.

Charge to the jury:

This ejectment was brought for one hundred and fifty acres of land, to which the defendants appeared, and pleaded not guilty; and they subsequently limit their defence for that part of the land only which is included within the warrant and survey of William Cox, dated the 24th June, 1839.

The only matter in controversy, therefore, is, that the defendants claim title to that part of the land which they allege is included within the warrant and survey of William Cox. Much evidence has been given to the jury on the subject, to show that the warrant of Peter Osborne, under which the plaintiff claims, was not actually located, and the survey actually made upon the ground; and that, therefore, Reed, under whom the defendants claim, had a right to include it within his lines, and take a warrant for it, and have it surveyed, and appropriated to himself, in 1829.

We instruct you that the evidence in the cause under the pleadings, is sufficient to entitle the plaintiffs to your verdict, unless the defendants have given evidence to satisfy you that it interferes with their title under Reed. If there be any evidence in the cause to satisfy your minds that the survey made upon the warrant of William Cox, interferes with and covers any part of the land included within the plaintiff's warrant and survey, then the question arises, was the warrant and survey of Peter Osborne actually surveyed upon the ground for which the ejectment was brought? and this we refer to the jury as a question of fact.

Is there, then, any evidence in the cause, that these two tracts of land interfere with each other at all, or that the defendants' survey includes any of the land for which this ejectment is brought? If there is not, and we must say we have not been able to discover any, then the plaintiff is entitled to recover. The only evidence on the subject is the testimony of Adam Wilt, who says: "When we were locating Reed's claim, he told us to stop, we would go no farther south; that he had heard of a claim of land there, and then we went an east course; I guess we were then on the land now in dispute; I think we were, but I did not know the

[Ulsh *v.* Strode.]

boundaries of it then." And whether this included any of the Osborne survey or not, we cannot say. Under the circumstances of this case, it is not for the defendants to dispute the title of the plaintiff, unless it interferes with their rights.

This charge excepted to by defendants, and this bill sealed.

FREDERICK WATTS, [L. S.]

Verdict for plaintiff.

Errors assigned.

1. The court withdrew the facts from the jury, and instructed them, as matter of law, what should have been submitted to them as one of fact.

2. The instruction of the court misled the jury from the real issue between the parties.

3. The court imposed the burden of proof upon the defendants below, and required of them to prove what belonged to the plaintiff below, and that which they utterly denied.

4. The court erred in saying: "We instruct you that the evidence in the cause under the pleadings is sufficient to entitle the plaintiff to your verdict, unless the defendants have given evidence to satisfy you that it interferes with their title under Reed," &c.

5. And in saying to the jury: "Is there any evidence in the cause, that these two tracts of land interfere with each other at all, or that the defendants' survey includes any of the land for which this ejectment was brought? If there is not, and we must say we have not been able to discover any, *then the plaintiff is entitled to recover,*" &c., &c., as stated in the after part of the charge to the close.

The case was argued by *Hepburn* for plaintiff in error.
*Biddle,* contra.

The opinion of the court was delivered by

BURNSIDE, J.—The act of the 21st March, 1806, *Dunlop,* 2d Ed. 243, among other things, entirely changed the practice, form and proceeding in an ejectment. Under the common law, as it existed from the first settlement of the province up to that period, the claimant of the land served a copy of the declaration against the casual ejector, who gave notice, in writing appended to the declaration, to the tenant in possession, in which the casual ejector informed the defendant that he had no title, and advised him to appear, by attorney, at the proper court, and, by a rule, he could cause himself to be made defendant in his stead; otherwise, he would suffer judgment, and the defendant would be turned out of possession. The real defendant then appeared, and, by leave of the court, he was permitted to appear to the action, on confession of lease, entry and ouster. He denied the trespass alleged against

him, and put himself upon the country. Upon the trial, it was essential for the plaintiff to prove the defendant in possession, or he was non-suited: see the form of the record in the appendix to 3d *Black. Com.*, and *Crompton's Practice*, title, Ejectment. The act of 1806 totally abolished this flummery, and gave a form, in which the real parties to the action were then placed on the record. Thus, in order to prevent surprise, the act directs that the plaintiff, on or before the first day of the term to which the writ is returnable, file a description of the land claimed, and directs the defendant to enter his defence for the whole or any part thereof before the next term.

The subsequent act of the 13th April, 1806, *Dunlop* 255, directs the plea of not guilty. In this case, the counsel of the defendant appeared before the return of the writ, (no doubt to save costs,) and pleaded, as the act directs, "not guilty." They filed no description, nor gave notice of the part they claimed. The parties went to trial on the general issue. The plaintiff proved his title to the survey of Peter Osborne. The defendants gave in evidence the improvement of Reed, and the warrant to Cox; and shewed they were the owners of that improvement and warrant; and insisted the Osborne survey was not made on the ground. In this they utterly failed, and the jury so found. Neither party shewed that the Osborne survey interfered with the improvement or warrant of the defendants, or how far they interfered. The errors assigned on the trial, and to the charge of the court, arise out of the professional adroitness and skill of the counsel.

A simple question, on either side, to either of the surveyors examined, would have settled the whole case.

Nor do I approve the extreme modesty of the court, neglecting to inquire how and where the titles interfered with each other. By the pleadings, the defendant must be deemed to be in possession of the whole Osborne survey, until the contrary was shewn. This is in accordance with the principles of the acts of 1806 and 1807. The paper book satisfies me the claims interfered; nor do I think the court withdrew the facts from the jury; nor did they mislead the jury from the issue trying.

This disposes of the two first assignments of error.

The third is, that the court imposed the burthen of proof on the defendants below, who were plaintiffs in error, and required them to prove what belonged to the plaintiff, and that which they utterly denied. The act of 1807 changed our law on this subject. The act makes it the duty of the defendant to enter his defence (if any he hath) for the whole or any part of the land in the plaintiffs writ. Upon this the act forms the issue. The defendant's express duty is to shew, specifically, what part of the plaintiff's survey he takes defence for. If he takes defence generally, by pleading not guilty, he takes it for the whole tract. As the

[Ulsh *v.* Strode.]

defendants did not make any specification of what part of the plaintiff's survey they claimed, the proper construction of the act and of these pleadings is that they claimed the whole of the land in controversy: hence the court was right in their instruction to the jury, that, under the pleadings, the plaintiff was entitled to a verdict.

If the defendants had taken their defence for all the land within the Cox survey, and that title was older and better than the plaintiff's, they would have been entitled to a verdict; but their object would seem to have been to defeat the plaintiff's right to the land he claimed, on the ground that the plaintiff's survey was defectively executed; in which they utterly failed.

Fourth error assigned: "That the court instructed the jury that the evidence, under the pleadings, is sufficient to entitle the plaintiff to a verdict, unless the defendants have given evidence to satisfy the jury that it interferes with their title under Reed," &c.

I think the defendant in error might have very justly complained of this instruction as stated, as it is manifestly clear that the Osborne warrant and survey was the older and better title. It does the plaintiffs in error no injury. It might have done the defendant in error great injury; but the defendants below have no right to complain of it. It was more favorable to them than they had any right to expect.

5. "In saying to the jury: 'Is there any evidence in the cause, under the pleadings, that the two tracts of land interfere with each other at all; or that the defendants' survey includes any of the land for which the ejectment was brought? If there is not, and we must say we have not been able to discern any, then the plaintiff is entitled to recover,' &c., &c., as stated in the after part of the charge to the close." The after part of the charge is that under the circumstances of this case, it is not for the defendants below to dispute the title of the plaintiff, unless it interferes with their rights. There certainly was no error in this.

The defendants took defence, as it is shewn, for the whole of the plaintiff's survey. If the plaintiff did not interfere with them, they ought to have disclaimed.

Finding that the plaintiff's warrant and survey was established, the counsel turns round, with extraordinary coolness, and contends, near the close of the trial, and now insists, that the plaintiff is bound, specifically, to shew the interference, and prove the extent of the defendants' interference and possession, before there can be a recovery—the very thing the acts of the Legislature of 1806–7, before cited, have provided against. I presume the learned counsel were not in practice before 1806; nor have they duly considered the acts of Assembly, or they would not have assigned this instruction as error.

The judgment is affirmed.